UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
IN CLERKS OFFICE

DARRELL DARBY
PETITIONER,

2006 DEC -1  P 12: 13

VS.

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION
NO. 04-11271-NG

TIMOTHY HALL
RESPONDENT

### PETITIONER'S MEMORANDUM OF LAW
### IN SUPPORT OF HABEAS CORPUS RELIEF

Now comes the Petitioner, pro se, moves this Honorable

Court to Grant him Habeas Corpus relief based on the foregoing

Memorandum of Law.

As reasons thereof, Petitioner presents the following claims

to be considered:

I.     Trial Counsel was ineffective by failing to argue the
       second trial was barred by the principles of double
       jeopardy, whereby the Commonwealth failed to present
       sufficient evidence to convict the Petitioner at the
       first trial

II.    Appellate counsel was ineffective by failing to raise
       trial counsel's ineffective in a post-conviction
       motion for new trial

III.   The Court violated  Petitioner's right to a fair and
       impartial tribunal during the sentencing phase

IV.    The Court violated Petitioner's right to effective
       cross-examination of Commonwealth witness

V.     Trial Counsel was ineffective by failing to object to
       the Commonwealth's questioning of Petitioner's witness
       of pending charges

VI.   Trial counsel's failure to object to the lack of a thorough instruction on honest but mistaken identification amounted to ineffective assistance of counsel

VII.  Federal Court's removal of Stay notwithstanding exhaustion was in progress in the State Court, constitutes "cause" allowing Petitioner to have his claims raised  herein to be considered directly by this Court

## HISTORY OF CASE

On February 1, 1997, the grand jury for Suffolk County had returned four indictments, charging Petitioner with armed assault with intent to murder, assault and battery with a dangerous weapon, illegal possession of ammunition and a firearm. Trial commenced on January 1, 2001, and concluded on January 8, 2001, in a mistrial. The state court's reason for declaring a mistrial for the jury's  inability to reach its decision was due to the jury's concern of the lack of evidence implicating the Petitioner as the shooter. On February 1, 2001, the second trial commenced, and concluded on February 5, 2001, with the jury finding the Petitioner guilty on all counts.

During the sentencing phase, the Court had imposed the sentence in violation of due process, when it specifically relied on the fact that the Petitioner did not express or show any remorse.

On appeal the Petitioner's conviction was affirmed, in violation of the Constitution of the United States and contrary to Supreme Court precedent.

I.  **TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO ARGUE THE SECOND TRIAL WAS BARRED BY THE PRINCIPLES OF DOUBLE JEOPARDY, WHEREBY THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE TO CONVICT THE PETITIONER AT THE FIRST TRIAL**

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportrinity to supply evidence which it failed to muster in the first proceeding." Tibbs v. Florida, 457 U.S. 31, 41 (1982), quoting Burks v. United States, 437 U.S. 1, 11 (1978). This prohibition, lying at the core of the Clause's protection, prevents the state from honing its trial strategies and perfecting its wvidence through successive attempts at convicting. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perserverance. Tibbs, supra, See Green v. United States, 355 U.S. 184, 187-188 (1957); United States v. Dinitz, 424 U.S. 600, 611 (1976); Arizona v. Washington, 434 U.S. 497, 508 (1978). Past cases have decided that a defendant, put to trial before a jury, may be subjected to the kind of 'jeopardy' that bars second trial for the same offense even though his trial is discontinued without a verdict. See Kepner v. United States, 195 U.S. 100, 128 (1904); Palko v. Connecticut, 302 U.S. 319, 322-323 (1938).

In the instant case, trial counsel was faced with the situation of the court declaring a mistrial after roughly eight hours of deliberation over a two day period. Preemptive to such

mistrial the jury had come back with the question, how did the Commonwealth come to learn the Petitioner's name as being the shooter. It could be reasonably inferred that the Commonwealth had failed to prove this crucial element of identity, coupled with circumstantial evidence of the Petitioner's involvement brought about the impasse. If true, the declaration of a msitrial would have been improper,[1] as it would have been to allow the Commonwealth the opportunity to present additional evidence which it did not present initially. See Richardson v. U.S., 468 U.S. 317, 327-328 (1984)( Double Jeopardy Clause "precludes retrial where the State has failed as a matter of law to prove its case despite a fair opportunity to do so." )( quoting Hudson v. Louisiana, 450 U.S. 40, 45, n.5 (1981)). See Arizona, 434 U.S., at 508 ( "The stricter scrunity is appropriate when the basis for the msitrial is the unavailability of critical prosecution evidence" ). **Cf.** Burks, 437 U.S., at 11 ( "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." ).[2]

---

1    The trial judge would have abused her discretion by declaring a mistrial sua sponte, to protect the Commonwealth's case, rather than the defendant's Constitutional right. See U.S. v. Jorn, 400 U.S. 470, 482-485 (1971). See also Commonwealth v. Horrigan, 41 Mass. App. Ct. 337 (1996); Commonwealth v. Collins, 412 Mass. 349 (1992); Commonwealth v. Steward, 396 Mass. 76 (1985).

2    The Federal Court had vacated the Stay in this case suggesting Double Jeopardy does not preclude Petitioner from being retried. However, retrial would be barred for the reasons cited herein (i.e., insufficient evidence). See Burks, supra.

Thus, given the jury had deliberated for approximately eight hours and the Commonweath, being fearful of an adverse verdict had persuaded the trial judge to discharge jury before it could be fairly said that they were deadlocked[3] when there was not "manifest necessity," see Arizona, 434 U.S., at 505-508, the Petitioner suggest that "the mistrial order was itself tantamount to an acquittal that terminated the first jeopardy." Richardson, 468 U.S., at 335. The jeopardy, an experienced trial counsel should have defended against. See Rice v. Marshall, 816 F.2d 1126 (6th cir. 1987)( any reasonably competent attorney would have recognized the double jeopardy implication ). See Prou v. U.S., 199 F.3d 37 (1st cir. 1999)( counsel's failure to put the State's case to an adversarial test, constitutes ineffective assistance of counsel ); United States v. Cronic, 466 U.S. 648 (1984)( Trial counsel's failure to subject the prosecution's case to a meaningful adversary testing process may constitute denial of due process and establish a per se violation of defendant's right to effective assistance of counsel ).

Hence, this Court has the authority to decide this claim directly under the holding of Wainwright v. Sykes, 433 U.S. 72 (1977), where the Supreme Court held that where trial counsel

---

3    The Court was require to instruct the jury in accordance with the "deadlock suggestions" charge in Commonwealth v. Rodriquez, 364 Mass. 87, 101-102 (1973). The failure to do so resulted in a substantial likelihood of a miscarriage of justice.

failed to preserve such claim for review. See Infra VII.

## II.   APPELLATE COUNSEL WAS INEFFECTIVE BY FAILING TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS IN POST-CONVICTION MOTION FOR NEW TRIAL

As a matter of right the Petitioner is entitled to effective assistance of appellate counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396 (1985). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the Petitioner must normally demonstrate (1) that his "counsel's representation fell below an objective standard of reasonableness" in light of the prevailing professiional norms, Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694. See Smith v. Robbins, 528 U.S. 529 (2000).

In applying this test to claims of ineffective assistance of counsel on appeal, however, reviewing court must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th cir. 1993). Appellate counsel is not obligated to assert all nonfrivolous issues on appeal, as "there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v.

Barnes, 463 U.S. 745, 752 (1983).

Here, undoubtably the pursuit of the Petitioner's claim of a Double Jeopardy violation was not a tactical decision for the reasons argued above. Thus, appellate counsel's performance amounted to ineffective assistance on appeal, by failing to raise such claim in a motion for new trial, and by such failure entitles the Petitioner's to a new trial.

## III. TRIAL COURT VIOLATED PETITIONER'S RIGHT TO A FAIR AND IMPARTIAL TRIBUNAL DURING THE SENTENCING PHASE

The law is well established that a fundamental tenet of due process is a fair and impartial tribunal. Marshall v. Jerrico, Inc., 446 U.S. 238 (1980). There the Supreme Court said:

> "This requirement of neutrality in
> adjudicative proceedings safeguards
> the two central concerns of procedural
> due process, the prevention of
> unjustified or mistaken deprivation
> and the promotion of participation and
> dialogue by affected individuals in
> the decisionmaking process.... The
> neutrality requirement helps to
> guarantee that life, liberty, or
> property will not be taken on the basis
> of an **erroneous or distorted conception**
> **of the facts or the law....**"

466 U.S., at 242 (citation omitted)( Emphasis added ).

Here, the Petitioner made no statements implicating his guilt or bolstered about shooting the victim. Hence, there was

no uttered non-remorsive statements on the record to be considered by the judge. Making it an erroneous factor to be considered in sentencing the Petitioner to 19 to 20 years in prison, far beyond the Commonwealth's recommondation. See Commonwealth v. Mills, 436 Mass. 387, 400 (2002)( "[A] judge's discretion is no unlimited, he may not punish a defendant for an untried criminal offense,...punish a defendant in order to send a personal philosphical message...or rely on information that is inaccurate or misleading,.... Furthermore, a judge may not punish a defendant for refusing to confess before sentencing...." ); Commonwealth v. Henriquez, 440 Mass. 1015, 1016 n.1 (2003)( "Improper remarks or reliance on improper factors at sentencing sufficient to create a substantial risk of miscarriage of justice...." ). See also, Porter v. Singletary, 49 F.3d 1483, 1487-88 (11th cir. 1995)( "If the judge was not impartial, there would be a  violation of due process. The law is well-established that a fundamental tenet of due process is a fair and impartial tribunal." ). Cf. U.S. v. Chantel, 902 F.2d 1018 (1st cir. 1990) ( constitution demands thqt judicial proceedings be conducted by a "neutral and detached judge." ).

Hence, where the Supreme Court has instructed the lower court's that a defendant has a due process right to question the procedure leading to the imposition of his sentence. See Gardner v. Florida, 430 U.S. 349, 358 (1977). This Court should not let such question fall upon deaf ears. Cf. Commonwealth v. Henriquez, 65 Mass. App. Ct. 912 (2006).

## IV. THE COURT VIOLATED PETITIONER'S RIGHT TO EFFECTIVE CROSS-EXAMINATION OF COMMONWEALTH'S WITNESS

The Supreme Court has construed the confrontation clause of the Sixth Amendment of the United State Constitution, to "hold that a primary interest secured by it is the right of cross-examination." Davis v. Alaska, 415 U.S. 308, 315 (1974), quoting Douglas v. Alabama, 380 U.S. 415, 418 (1965). Cf. Commonwealth v. Vardinski, 438 Mass. 444, 450-453 (2003). Cross-examination has been called "the greatest legal engine even invented for discovering the truth." Maryland v. Craig, 447 U.S. 836, 846 (1990), quoting California v. Green, 399 U.S. 149, 158 (1970). Opportunities to challenge evidence openly received, to cross-examine, and to rebut prosecution which has burden of proving guilt beyond reasonable doubt are all required for due process. Benoit v. Gardner, 241 F.Supp. 206, motion denied, 345 F.2d 792, affirmed, 351 F.2d 846 (1965).

A judge, of course, has broad latitude to direct the course of a trial, and this judicial discretion extends to limiting and otherwise controlling cross-examination. Delware v. Van Arsdall, 475 U.S. 673, 679 (1986). But a judge's discretionary determination as to the scope of cross-examination will not stand if "the judge abused [his] discretion and...the defendant was prejudiced thereby." Commonwealth v. Miles, 420 Mass. 67, 72 (1995). To determine whether the judge unreasonably limited cross-examination, this Court must "weigh the materiality of

the witness's direct testimony and the degree of the restriction on cross-examination." Miles, supra.

Here, the judge's degree of restriction on cross-examination was extreme of Officers' Windell Hosey and Gregory Brown on material points, which would have probably created a reasonable doubt in the jurors' minds. These points were (1) Whether the Petitioner was listed as a memeber of the Buck Shot Crew; (2) Whether the Petitioner was associated with a knwon member of the Buch Shot Crew; and (3) Whether the victim was shot by another person by the name of Hendrick Davis. The direct testimony of both officers did establish that they had personal knowledge of the Youth Violence Strike Force operation, and Officer Brown being part of the Youth Violence Strike Force knew the Petitioner. However, on cross-examination none of these areas were allowed to be explored. Even moreso, the most crucial point was, some other person, other than the Petitioner may have shot the victim. Thus, amounting to reversible error. See Miles, 420 Mass., at 73 ( violation of right to cross-examine must reversed unless harmless beyond reasonable doubt ). And where the Petitioner's constitutional right to cross-examine  has been denied, the Commonwealth bears the burden of establishing that the error was harmless. Vardinski, supra. The factors to determine whether the error was harmless is: "The importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating

or contradicting the testimony of the witness material points, the extent of cross-examination otherwise permitted, and, of course the overall strength of the prosecution's case." Commonwealth v. DiBenedetto, 414 Mass. 37, 40 (1992), quoting Delaware, 475 U.S., at 684.

Here, the weight of the testimony which would not have been cumulative was that the Petitioner was not part of the Buck Shot Crew and that someone other than the Petitioner was accused and suspected of shooting the victim, would have raised a reasonable doubt which otherwise did not exist. The presence of evidence corroboarting these points can be found therein the record. See (Trial Transcript Volume 2, pages 178-179, 198-201). In none of these areas were cross-examination permitted. And at best the Commonwealth's case was circumstantial, with the lone exception of the victim's highly questionable and suspect identification of the Petitioner.

Only but for the limitations on the Petitioner's right to effective cross-examination, the trial court committed "constitutional error of the first magnitude" requiring a new trial. Brookhart v. Janis, 384 U.S. 1, 3 (1966).

The trial judge further impaired Petitioner's ability to a fair trial by limiting defense counsel's cross-examination of the victim and other witnesses concerning the possibility of the perpetrators who may have committed the crime.

The right to cross-examination is a component to a fair

trial. Commonwealth v. Graziano, 368 Mass. 325 (1975). The right
may assume some constitutional dimensions when the cross-
examination is for the purpose of showing bias. Id., at 330.
a defendant msut be allowed to introduce evidence show that
another individual may have committed the crime. Commonwealth
v. Murphy, 282 Mass. 393, 397 (1933). The defendant should also
be allowed to introduce evidence that another person had the
motive, intent and opportunity to commit the crime. Id. See
Holmes v. South Carolina, __U.S.__, 126 S.Ct. 1727 (2006)( Held
that exclusion of defense evidence of third-party guilt denied
defendant of fair trial ). The evidence "should be closely related
to the facts of the case against the defendant." Graziano, 368
Mass., at 330. A "judge's discretion to exclude such evidence
is not absolute and his ruling may be set aside if justice
requires a different decision. Id., citing Murphy, 282 Mass.,
at 398.

Here, the Petitioner's attorney was trying to prove that
there were other possible individuals who may have had a motive
to shoot the victim. (Trial Transcript Volume 2, pages 73-74).
Counsel attempted to ask the victim sbout the incident involving
his friend named Braggs (Trial Transcript Volume 2, page 75).
Braggs was shot in front of the victim's house a few days before
the victim was shot. Id. The Petitioner's counsel could only
ask the victim if he knew about the incident but not about the
incident itself (Trial Transcript Volume 2, pages 75-76).

Counsel wanted to see what the victim knew about the incident
because it was gang related. Counsel's goal was to prove that
there may been others who possessed a motive to shoot the victim
(Trial Transcript Volume 2, page 73). Denial of this inquiry
impeded the Petitioner's ability to show that another individual
may have committed the crime. Holmes, __U.S.__, 126 S.Ct., at
1733 ("'[E]vidence offered by accused as to the commision of
the crime by another person must be limited to such facts as
are inconsistent with his own guilt, and to such facts as raise
a reasonable inference or presumption as to his own innocence'").

Counsel was not allowed to probe an incident involving
the victim and a Donald Ruiz. (Trial Transcript Volume 2, page
73). The victim had an altercation with Diaz at Dorchester High
School. Id. Counsel attempted to connect the Diaz incident and
the Braggs shooting. Id. The opportunity was denied by the court's
prejudicial limiting of defense counsel's questioning of the
witness. Id.

Additionally, inquiry into why the victim had not crossed
the street when he supposedly saw the Petitioner, recognized
him as as a rival gang member and knew that the gang was seeking
him, was also disallowed by the court. Id. Defense sought to
attack the credibility of the victim's testimony that he had
an altercation with the Petitioner and his friends. (Trial
Transcript Volume 2, page 74). The Petitioner's attorney wondered
why the victim was not looking over his shoulder in lieu of
the fact that his friend was shot a few days before. Id. This

line of questions was viewed as immaterial to the case and the court sustained an objection of the prosecution. (Trial Trascript Volume 2, page 73).

The court's limiting of defense counsel's cross-examinaiton prevented the jury from hearing evidence that another person had motive, opportunity and intent to commit the crime and did so commit the crime. As the evidence suggested included events within days and weeks before the value and not remote in time. The trial court's error denied the Petitioner his constitutionally protected right to cross-examine his accusers. The trial court's error also denied the Petitioner his right to a fair trial.

## V. TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO OBJECT TO THE COMMONWEALTH'S QUESTIONING OF PETITIONER'S WITNESS ON PENDING CRIMINAL CHARGES

At a criminal trial a defense counsel may choose as a reasonable tactical decision not to object to the introduction of some or all of the evidence, to bolster the defendant's own defense. See, e.g., Commonwealth v. Beauchamp, 424 Mass. 682, 691-692, & n.4 (1997). Necessarily, for defense counsel to rest on a tactical or strategical decision, necessitates that one or the other exists. See Berryman v. Morton, 100 F.3d 1089, 1096 (1996). "'Strategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on investigation.'" Wiggins v. Smith, 539 U.S. 510, 533 (2003).

In determining if a defendant's counsel has been ineffective

the court applies a two-part test: (1) did counsel's behavior
fall measurably below that which might be expected of an
ordinarily falliable lawyer and; (2) did counsel's behavior
likely deprive the defendant of an otherwise available substantial
ground for defense. Commonwealth v. Saferian, 366 Mass. 89,
96 (1974). This standard requires "...a discerning examination
and appraisal of the specific circumstances of the given case
to see whether there has been a serious incompetency, or
inattention of counsel...." Id. Where tactical or strategic
judgments are called into question, defendant must show that
his trial attorney's judgment was "manifestly unreasonable."
Commonwealth v. Hamm, 19 Mass. App. Ct. 72, 76 (1984). Lastly,
the court must consider whether the prejudice suffered by the
defendant resulted from the shortcomings of the trial cousnel.
Commonwealth v. White, 28 Mass. App. Ct. 417 (1990). These
judicial considerations are peculiar to each case and must protect
each defendant's Sixth Amendment rights. Commonwealth v.
Florentino, 396 Mass. 689 (1986).

Here, the prosecutor should not have been allowed to
question Correia about this pending manslaughter charge.
Information regarding Correia's pending criminal charges
prejudicially injured Correia's credibility in the eyes of the
jury and therefore, prejudiced Petitioner's case. Where Correia's
pending manslaughter charge had no connection to the incident
at hand, trial counsel should have objected to the prosecutor's

line of questioning.

The general rule prohibits impeachment of a witness with questions concerning arrests. Commonwealth v. Haywood, 377 Mass. 755 (1979). Moreso, "[a] criminal defendant's constitutional rights under the Confrontation Clause are violated when he is prohibited from engaging in 'otherwise appropriate' cross-examination" raised to show someone other than Petitioner had the opportunity to shot the victim. U.S. v. Osorio, 929 F.2d 753, 759 (1st cir. 1991). "The ability to cross-examine the witness might be undermined to the point of a denial of confrontation rights...by such things as the judge's limiting the scope of cross-examination...." Commonwealth v. Cong Duc Le, 444 Mass. 431, 438 (2005), citing United States v. Owens, 484 U.S. 554, 561-562 (1988).

Here, the trial judge was unable to exercise his discretion on the relevancy or admissibility of the impeachement testimony since trial counsel failed to object to the prosecutor's question of defense witness Correia. See (Trial Transcript Vol. 3, page 50). Correia, a friend of the victim, testified for the defense regarding the victim's failure to identify Petitioner prior to viewing him in police photo array. See (Trial Transcript Vol. 3, page 46). The prosecution, upon cross-examining Correia regarding this issue, inquired of Correia information regarding his pending criminal case involving a homicide, to which trial counsel should have objected.

Where there was no evidence produced that Correia's pending charge was in any way related to the shooting of the victim, the prosecution should not have been allowed to impeach Correia with that information. Clearly, the court, had defense counsel objected as required, would have disallowed the questioning.

Instead, the prosecution was allowed to question Correia regarding a pending homicide charge. This totally irrelevant information was brought to the jury's attention due to trial counsel's ineffectiveness. The jury, aware of Correia's numerous other convictions used to impeach him by the prosecution, was also faced with determining the credibility of an individual accused of manslaughter. The injury to the Petitioner's case due to counsel's failure to object was enormous when balanced against the fact that Correia was not only a friend of the victim but also was the only witness to testify that the victim continued to deny knowing the identity of the shooter from the time of the incident to months later while in rehabilitation. Defense counsel could have had no possible strategy for not seeking to prevent this damaging information from reaching the jury. Correia pending charge should have not been then brought to the jury's attention.

In arguing counsel's failure to prepare and conduct an adequate defense, "defendant can make no headway in absence of a showing that the fault probably resulted in a forfeiture of a substantial defense." Saferian, 366 Mass., at 98. When

tactical or strategic judgments of a lawyer questioned, "we require that such judgments be [shown to be] manifestly unreasonable." Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978).

Counsel's failure to object to the prosecution's impeachment of such an important witness infringed upon his rights to effective assistance of counsel guaranteed by the Constitution of the United States of America and the Commonwealth of Massachusetts.

## VI. TRIAL COUNSEL'S FAILURE TO OBJECT TO THE LACK OF A THOROUGH INSTRUCTION ON HONEST BUT MISTAKEN IDENTIFICATION AMOUNTED TO INEFFECTIVE ASSISTANCE OF COUNSEL

Again, the omission of trial counsel compounds the full effect of his ineffectiveness. Here, counsel had objected to the court's failure to give the requested instruciton of a honest but mistaken identification instruction. (Trial Transcript Volume 3, page 145). The court had then instructed the jury:

> "In considering the identification, as I instructed you on identification, you can also consider whether or not there was a good-faith mistake in terms of the identification." Id., at 146.

This instruction would fall well short of what the Massachusetts Supreme Judicial Court held to be sufficient, in Commonwealth v. Rodriguez, 378 Mass. 296 (1979). See

42 Mass. Prac. Criminal Defense Motion, § 10.24. Therein, the
recommended honest but mistaken identification instruction be
conveyed to the jury, as such:

> "In deciding whether or not to believe a
> witness who identifies the defendant as
> the perpetrator, remember that you must
> consider not only whether the witness is
> trying to tell you the truth or is lying.
> You must also decide whether that witness's
> identification is accurate or instead is
> an honest mistake. Sometimes people
> perceive an event erroneously, or forget
> things, or get confused. Deciding whether
> a witness is trying to tell you the truth
> is only the first step. You must then go
> on todecide whether the witness's
> identification is accurate in fact." Id.

The above referenced instruction is what should have been
given to the jury, and counsel's failure to ensure such
instruction was given, amounted to ineffective assistance of
counsel. See Commonwealth v. Williams, 54 Mass. App. Ct. 236,
239 (2002)( "The cases make plain that judges should furnish
jurors with a set of practical criteria by which they can assess
the quality of an asserted identification and, where justified,
that judges should alert jurors to the possibility of an honest
but mistaken identification." )( citations omitted ). Cf.
Commonwealth v. Pressley, 390 Mass. 617, 620 (1983).

**VII. FEDERAL COURT'S REMOVAL OF STAY NOTWITHSTANDING
EXHAUSTION WAS IN PROGRESS IN THE STATE COURT,
CONSTITUTED "CAUSE" ALLOWING FOR PETITIONER TO HAVE
HIS CLAIMS RAISED HEREIN, CONSIDERED DIRECTLY ON
HABEAS CORPUS REVIEW**

The "cause" and "prejudice" exception of  habeas corpus
rule will afford an adequate guarantee to have a claim reviewed,
and will not prevent a federal habeas corpus court form
adjudicating for the first time the federal constitutional claim
of a defendant who in the absence of such an adjudication will
be the victim of a miscarriage of justice. Wainwright v. Sykes,
433 U.S. 72, 87 (1977).

Here, the federal court invoked a stay to allow the
Petitioner the opportunity to exhaust the claims raised herein.
However, after nearly two years the court revoked the stay
suggesting that the Double Jeopardy claim was without merit.
This was not something the judge had just figured out two years
later. If it is  without merit now, it was without merit then.
So why grant the stay?

Hence, the federal court's action removing the stay was
sufficient to constitute cause and prejudice to the Petitioner.
Therefore, the Petitioner's claims herein now, be reviewed as
if they were properly exhausted.

## CONCLUSION

Wherefore, Petitioner request that this court grant his
Habeas Corpus Petition.

Respectfuuly submitted
By the Petitioner

Darrell Darby, <u>pro se</u>
Souza Baranowski Corr. Cntr
Post Office Box 8000
Shirley, MA 01464

Dated: 1 PEC 06

## CERTIFICATE OF SERVICE

I, hereby certify that I have cause the foregoing MEMORANDUM OF LAW to be served upon the Respondent's Counsel, on this 1 day of December, 2006.

Darrell Darby, <u>pro se</u>