UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DARRELL DARBY,                )
                              )
    Petitioner,                )
                              )
v.                            )        CIVIL ACTION
                              )        NO. 04-11271-NG
TIMOTHY HALL,                 )
                              )
    Respondent.                )

# REPORT AND RECOMMENDATION ON
# PETITION FOR WRIT OF HABEAS CORPUS
# PURSUANT TO 28 U.S.C. § 2254 AND MOTIONS TO STAY

September 11, 2007

DEIN, U.S.M.J.

## I.  INTRODUCTION

The petitioner, Darrell Darby ("Darby" or the "defendant" or the "petitioner"), is presently incarcerated following his conviction in February 2001 by a Suffolk County jury of charges of armed assault with intent to murder, assault and battery by means of a dangerous weapon, and possession of weapons and ammunition.  Darby filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is presently before the court on the respondent's Second Motion to Dismiss (Docket No. 25), whereby the respondent is seeking dismissal of the entire petition on the grounds that it contains several unexhausted claims.  Also before this court is petitioner's motion to stay this action (Docket No. 32), whereby Darby is seeking to have this action stayed in order to allow him to exhaust a new claim.

For the reasons detailed herein, this court finds that dismissal is not warranted in light of the exhausted claims, and that a stay is not warranted because Darby's unexhausted claims are not potentially meritorious. Therefore, this court recommends to the District Judge to whom this case is assigned that both motions be DENIED. In addition, this court recommends that the petitioner be given thirty (30) days from the District Judge's ruling to drop his unexhausted claims. If he fails to do so, the respondent should be allowed to renew his motion to dismiss.

## II. STATEMENT OF FACTS[1]

### The Underlying Conviction and Direct Appeal

On February 2, 1997, Darby was indicted by a Suffolk County grand jury for armed assault with intent to murder, assault and battery with a dangerous weapon, illegal possession of a firearm, and illegal possession of ammunition. SA Ex. 3 at 4. The charges arose out of the shooting of a rival gang member on December 13, 1996. Id. at 6. Darby's first trial began on January 3, 2001, and a mistrial was declared on January 9, 2001, when the jury reported it was deadlocked. Id. at 5. Darby was tried again before another judge beginning on February 1, 2001. Id. He was convicted on all charges on February 5, 2001, and was sentenced on February 8, 2001 to MCI Cedar Junction for a

---

[1] The respondent has submitted the record below in a Supplemental Appendix ("SA") filed as Docket No. 27. The state trial and appellate courts' findings of facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). See Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002), cert. denied, 537 U.S. 1236, 123 S. Ct. 1360, 155 L. Ed. 2d 202 (2003). Unless otherwise indicated, the facts are not in dispute.

term of 19-20 years on the armed assault with intent to murder charge; 9-10 years for the assault and battery with a dangerous weapon charge; and 4-5 years on the illegal possession of a firearm charge, with all sentences to be served concurrently.  SA Ex. 1 at 13.  The illegal possession of ammunition charge was filed with a finding of guilty.  Id.

      The petitioner, through counsel, filed a timely direct appeal to the Massachusetts Appeals Court, claiming that (1) trial counsel was ineffective and had erred in failing to object to the questioning of a defense witness regarding a pending criminal charge; and (2) that the trial court had erred in limiting defense counsel's cross-examination of witnesses regarding other possible perpetrators.  SA Ex. 3 at 2.  In a supplemental brief, Darby also claimed that (1) the sentencing judge was not impartial and had violated his constitutional right to a fair and impartial trial; (2) that the trial court had wrongfully excluded evidence that the police had failed to pursue certain leads; and (3) that the prosecutor's closing argument was likely to amount to a substantial risk of miscarriage of justice in appealing to the jury's emotions and facts not in evidence.  SA Ex. 4.  These claims were all rejected by the Massachusetts Appeals Court, which confirmed Darby's convictions in an unpublished decision issued on January 28, 2003.  SA Ex. 6, Commonwealth v. Darby, 57 Mass. App. Ct. 1106, 782 N.E.2d 48 (2003) (unpub. op).

      Darby then filed an application for leave to obtain further appellate review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC").  SA Ex. 8.  Therein, Darby claimed that (1) trial counsel was ineffective in failing to object to the prosecution's questioning of a defense witness regarding a pending criminal charge; and

(2) the trial judge had denied Darby a fair trial by limiting defense counsel's cross-examination concerning the possibility of other perpetrators of the crime. SA Ex. 8 at 10-18. The ALOFAR was denied without opinion on April 2, 2003. SA Ex. 9; Commonwealth v. Darby, 439 Mass. 1102, 786 N.E.2d 394 (2003) (table). Darby then filed a pro se ALOFAR raising the claims that (1) the sentencing judge was not impartial and had violated his right to a fair and impartial tribunal by considering his alleged lack of remorse when determining the sentence; and (2) that the trial court had wrongfully limited cross-examination. SA Ex. 13. The SJC treated the pro se ALOFAR as a motion for reconsideration, and it was denied without opinion on June 5, 2003. SA Ex. 7.

## The Habeas Petition

This case has a complicated procedural history in this court, which will be explained in some detail in light of the issues pending before the court.

Darby filed a timely habeas petition pursuant to 28 U.S.C. § 2254 on June 7, 2004. Therein he raised four grounds, namely (1) the sentencing judge had violated his right to a fair and impartial tribunal by considering his alleged lack of remorse when determining the sentence; (2) the trial court had wrongfully restricted the cross-examination of the Commonwealth's witnesses on material points, including "whether another rival gang had shot the victim; [w]hether Defendant was part of the gang alleged to have shot the victim; and [w]hether Defendant was a known associate of the gang identified as being responsible for shooting the victim"; (3) trial counsel was ineffective in failing to object to the Commonwealth's questioning of a defense witness on a pending charge or to the

-4-

trial court's bias at the sentencing phase, and "not arguing in favor of Double Jeopardy for the Defendant wherein the jury heard all of the evidence and was unable to convict the Defendant on the evidence presented"; and (4) appellate counsel was ineffective by failing to raise the claim of Double Jeopardy on appeal.  Docket No. 1.  In his petition, Darby asserted that he had not raised the double jeopardy claims previously because he had not learned of the denial of his pro se ALOFAR until April 2004, and he had to file in Federal Court by June 5, 2004.  Docket No. 1 at ¶ 13.

The respondent filed his first motion to dismiss on July 12, 2004, seeking the dismissal of the petition on the grounds that the defendant had failed to present his double jeopardy arguments to the state courts.  Docket No. 3.  The defendant opposed the motion to dismiss and requested a stay to give him time to exhaust his claims.  Docket No. 6.  On October 6, 2004, the Court dismissed the unexhausted claims without prejudice, and stayed the remaining proceedings in this court.  Pursuant to the court's order, Darby was to report to the court within thirty days confirming that he was pursuing his unexhausted claims in state court.  Docket at 10/6/04.

Due to an administrative oversight, this court did not receive Darby's notice, dated November 6, 2004, that he was pursuing his state court remedies and had filed a motion for a new trial raising the double jeopardy issues.  See SA Ex. 10.  Therefore, on December 1, 2004, the court lifted the stay on the remaining claims.  The stay was promptly reinstated on December 9, 2004 upon notice to the court that Darby was

-5-

pursuing his state claims.  See Docket at 12/9/04.  The defendant was further ordered to report on the status of his state proceedings by May 10, 2005.  Id.

In accordance with various orders of the court, Darby filed status reports on or about May 11, 2005 (Docket 10), July 20, 2005 (Docket 12), November 10, 2005 (Docket 14), and May 16, 2006 (Docket No. 17).  Throughout that period there was no ruling by the state court on his motion for a new trial.  Meanwhile, on December 22, 2005, Darby filed a motion for leave to file along with a supplemental motion for new trial in the Suffolk Superior Court.  SA Ex. 12, SA Ex. 1 at 12/22/05.  Therein, he raised a number of new issues.  Of significance to the instant case, among the claims raised was that trial counsel was ineffective for failing to object "to the court's terse, one sentence, instruction on honest but mistaken identification."  SA Ex. 12 at ¶¶ 6, 7.

On June 16, 2006, Darby filed in this court a motion for an order directing the state court to rule on his motion for a new trial.  Docket No. 18.  That motion was denied by order dated June 30, 2006.  Docket No. 19.  In addition, the court ruled that the double jeopardy claims the defendant was pursuing were without merit.  As the court held:

> It has come to the Court's attention, ... that the only unexhausted claims stem from petitioner's assertion that he received ineffective assistance of counsel at trial and on appeal because counsel failed to raise a double jeopardy argument.  Petitioner argues that his Fifth Amendment rights were violated because after his initial trial, the jury could not reach a verdict, and the judge declared a mistrial.  Thereafter, petitioner was tried a second time and found guilty.
>
> The Supreme Court has clearly ruled that the right to be free from double jeopardy is not violated if a defendant is retried following a hung jury.  See Richardson v. United States, 468 U.S. 317, 324

> (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause .... We are entirely unwilling to uproot this settled line of cases.").
>
> In light of this case law, I find it unnecessary to continue to stay the case. The STAY IS HEREBY LIFTED, and the litigation should proceed on the merits of petitioner's exhausted claims.

Docket No. 19. Darby filed a motion for reconsideration of this order, Docket No. 21, which was denied by the court on July 28, 2006. See Docket at 7/28/06. A briefing schedule to address the merits of the defendant's exhausted claims was set. Id.

On December 1, 2006, Darby filed his memorandum of law in support of his petition for a writ of habeas corpus. Docket No. 23. Therein he renumbered his claims and raised additional ones in support of his petition. In particular, Darby raised the following grounds to be considered in connection with his petition:

I. Trial Counsel was ineffective by failing to argue the second trial was barred by the principles of double jeopardy, whereby the Commonwealth failed to present sufficient evidence to convict the Petitioner at the first trial

II. Appellate counsel was ineffective by failing to raise trial counsel's ineffective[ness] in a post-conviction motion for a new trial

III. The Court violated Petitioner's right to a fair and impartial tribunal during the sentencing phase

IV. The Court violated Petitioner's right to effective cross-examination of Commonwealth witness

V. Trial Counsel was ineffective by failing to object to the Commonwealth's questioning of Petitioner's witness of pending charges

    VI.    Trial counsel's failure to object to the lack of a thorough instruction on honest but mistaken identification amounted to ineffective assistance of counsel

    VII.    Federal Court's removal of Stay notwithstanding exhaustion was in progress in the State Court, constitutes "cause" allowing Petitioner to have his claims raised herein to be considered directly by this Court

Docket No. 23. Thus, Grounds I and II raise the double jeopardy claims which are the basis for Darby's pending motion for a new trial in the state court, and the court's order of October 6, 2004. Ground VI is the claim included in Darby's supplemental motion for a new trial, the filing of which has not yet been allowed by the state court. Ground VII is a new count which has not been presented to the state courts.

    On December 27, 2006, the respondent filed his second motion to dismiss. Therein, the respondent contends that the entire petition should be dismissed because it contains unexhausted claims. Darby has filed an opposition to the second motion to dismiss, along with a memorandum. Docket Nos. 29-30. In addition, on June 22, 2007, he filed a motion to stay proceedings to allow him time to exhaust his state remedies concerning Ground VI, i.e., his claim that trial counsel's failure to object to the lack of a thorough instruction on honest but mistaken identification amounted to ineffective assistance of counsel. Docket No. 32. Presumably Darby is seeking leave to file a new state court motion raising this claim because the state court has not ruled on his motion for leave to supplement his motion for a new trial.

    Additional facts will be provided below where appropriate.

### III.  DISCUSSION

#### A.    Standard of Review - Mixed Petitions

The respondent has moved to dismiss the habeas petition on the grounds that it contains unexhausted claims in addition to the claims that are admittedly exhausted.  It is well established, however, that where, as here, a petition is a "mixed petition" in that it contains both exhausted and unexhausted claims, either the federal court should stay the matter to enable the petitioner to pursue his remedies in state court or, if a stay is not warranted, the court "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims."  Jones v. Bock, __ U.S. __, 127 S. Ct. 910, 925, 166 L. Ed. 2d 798 (2007) (internal quotation omitted).  It is only if the petitioner declines to dismiss his unexhausted claims that "the district court should dismiss the entire petition without prejudice."  Clements v. Maloney, 485 F.3d 158, 169 (1st Cir. 2007).  Since the respondent has requested the dismissal of the entire petition because of its status as a mixed petition, the respondent's motion to dismiss should be denied.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thus giving the state the first 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Josselyn v. Dennehy, 475 F.3d 1, 2-3 (1st Cir. 2007) (quoting Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (internal citations omitted)).  In light of this total exhaustion requirement, until Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Supreme Court

had held that a federal district court could not adjudicate mixed habeas petitions, and that such petitions were to be dismissed. See Rose v. Lundy, 455 U.S. 509, 518-19, 102 S. Ct. 1198, 1203-04, 71 L. Ed. 2d 379 (1982). In connection with AEDPA, Congress maintained the total exhaustion requirement but imposed a one-year statute of limitations for the filing of fully-exhausted claims in a federal habeas petition. 28 U.S.C. § 2244(d). Congress, however, did not provide for the tolling of the limitations period while a mixed habeas petition was pending in federal court. Josselyn, 475 F.3d at 4. "As the Supreme Court recently explained, the combined effect of these provisions has caused difficulties for filers of mixed petitions:

> "As a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under Lundy after the limitations period has expired, this will likely mean the termination of any federal review."

Id. at 4 (quoting Rhines v. Weber, 544 U.S. 269, 275, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005)). To remedy this situation, the Supreme Court, in Rhines, approved a "stay and abeyance" procedure pursuant to which "a district court can stay the petition and hold it in abeyance while the petitioner exhausts the unexhausted claims." Id. After the claims are exhausted, the district court would lift the stay and adjudicate the habeas petition. Id.

Nevertheless, the Rhines court recognized that employing the stay and abeyance procedure undermines the AEDPA's goal of "encouraging finality by allowing a

petitioner to delay the resolution of the federal proceedings" as well as its goal "of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Rhines, 544 U.S. at 277, 125 S. Ct. at 1534. Therefore, the Court held, the stay and abeyance procedure should only be used in "limited circumstances" where (1) "there was good cause for the petitioner's failure to exhaust his claims first in state court[,]" (2) the claims are "potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 277, 278, 125 S. Ct. at 1535. If "the court determines that the stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." Id. at 278, 125 S. Ct. at 1535 (internal citation omitted). Thus, the question before this court is whether a stay is warranted in connection with either Darby's double jeopardy claims or the claim concerning the innocent mistake charge. Since, as detailed below, neither claim is "potentially meritorious," this court recommends that the motion for a stay be denied.

  **B.**  **Double Jeopardy Claims**

  In lifting the stay, the District Judge ruled that Darby's claims of double jeopardy based on a retrial following a hung jury are without merit. There is no reason to disturb that ruling.

"The [c]onstitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." Green v. United States, 355 U.S. 184, 187, 78 S. Ct. 221, 223 (1957). As the Green Court explained:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Id. at 187-88, 78 S. Ct. at 223. This principle, however, does not mean that every time a criminal trial ends without a conviction, there is no possibility of a retrial. As the Green Court explained further, while the double jeopardy clause "prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict[,]" "jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where unforeseeable circumstances arise during the first trial making its completion impossible, such as the failure of a jury to agree on a verdict." Id. at 188, 78 S. Ct. at 224 (internal punctuation and citation omitted; emphasis added).

A "mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has] long [been] considered the classic basis for a proper mistrial." Arizona v.

Washington, 434 U.S. 497, 509, 98 S. Ct. 824, 832, 54 L. Ed.2d 717 (1978).  As the Supreme Court explained:

> The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country.  Instead, without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial.  This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

Id.  See also Sattazahn v. Pennsylvania, 537 U.S. 101, 109, 123 S. Ct. 732, 738, 154 L. Ed. 2d 588 (2003) (under normal circumstances, a second trial after a hung jury does not violate the Double Jeopardy Clause).

In the instant case, Darby argues that these principles should not apply because there was insufficient evidence to convict him at his first trial, as evidenced by the fact that, before being declared deadlocked, the jury had come back with a question about how the Commonwealth had learned his name as being the shooter.  Pet. Mem. (Docket No. 23) at 3-4.  Based on this question, Darby claims:

> [i]t could be reasonably inferred that the Commonwealth had failed to prove this crucial element of identity, coupled with circumstantial evidence of the Petitioner's involvement brought about the impasse. If true, the declaration of a m[is]trial would have been improper, as it would have been to allow the Commonwealth the opportunity to present additional evidence which it did not present initially.
>
> . . . .
>
> Thus, given the jury had deliberated for approximately eight hours and the Commonwealth, being fearful of an adverse verdict had persuaded the trial judge to discharge [the] jury before it could be fairly said that they were deadlocked when there was not "manifest

> necessity," ... the Petitioner suggest[s] that "the mistrial order was itself tantamount to an acquittal that terminated the first jeopardy."

Id. at 4-5 (internal citations and footnotes omitted).[2]

Darby's arguments are without merit. The law is clear that a court will not review the sufficiency of the evidence in a trial which ended in a hung jury, and that the double jeopardy clause does not bar a retrial in such circumstances. United States v. Porter, 807 F.2d 21, 22 (1st Cir. 1986); United States v. Carpenter, 494 F.3d 13, 25-26 (1st Cir. 2007) (where there is a hung jury, a second trial is not barred even if there had been insufficient evidence to convict at the first trial). That is because "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected. The government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree. Regardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial." Richardson v. United States, 468 U.S. 317, 326, 104 S. Ct. 3081, 3086, 82 L. Ed. 2d 242 (1984). Consequently, even if Darby is correct and there was insufficient evidence at his first trial to convict, the Double Jeopardy Clause does not bar his retrial

---

[2] Darby states in a footnote that it was error for the trial judge to fail to give a "deadlock suggestion" charge before declaring the jury deadlocked. See Pet. Mem. at 5, n.3. However, he has not submitted any part of the record to establish what, in fact, took place which led to the judge's decision to declare a mistrial. Moreover, he has not raised as a grounds for his habeas petition that the trial judge prematurely declared a mistrial. Therefore, the issue is not before this court.

following a hung jury.  Since his double jeopardy claims are not "potentially meritorious," no stay is warranted pending resolution of his motion for a new trial in state court.[3]

### C.  "Honest But Mistaken Identification" Jury Charge

Darby is also seeking a stay to pursue his challenge to the "honest but mistaken identification" jury charge.  Specifically, Darby contends that in response to his counsel's objection to the trial court's failure to give a requested instruction about the possibility of an honest but mistaken identification, the trial judge instructed the jury:

> In considering the identification, as I instructed you on
> identification, you can also consider whether or not there was a
> good-faith mistake in terms of the identification.

Pet. Mem. at 18.[4]  Darby contends that this charge was insufficient, and that his trial counsel's failure to further object constitutes ineffective assistance of counsel.  This court disagrees and finds that this claim is not "potentially meritorious."  Consequently, no stay to pursue this claim in state court is warranted.

### Timeliness of Claim

As an initial matter, this court needs to address the respondent's contention that Darby's request for a stay to pursue this claim should be denied because there was not "good cause for the petitioner's failure to exhaust his claims first in state court."  See

---

[3] In light of this conclusion, Darby's new Ground VII, which challenges the lifting of the stay in this court while the state court proceedings were still pending, is without merit.  The stay was appropriately lifted since there is no merit to Darby's double jeopardy claim.

[4] Darby has not submitted any relevant transcript pages.

Maloney, 485 F.3d at 169-70 (where petitioner failed to establish good cause for failure to exhaust his state claim, he cannot take advantage of the "stay and abeyance" procedure) (internal quotation omitted). While, admittedly, Darby has not explained his delay in pursuing this claim, this court does not base its decision on Darby's lack of good cause for failure to exhaust his state court remedies. As the record shows, Darby was given a stay to pursue his double jeopardy claim. While that stay was in effect, and prior to any ruling by the state court on his motion for a new trial, Darby sought to supplement his state court motion to add, inter alia, a challenge to trial counsel's failure to object to the jury charge. Thus, it is clear that the claim of ineffective assistance of counsel was not interposed for the purpose of delay — presumably it will be addressed by the state court at the same time it considers the double jeopardy claims. Nevertheless, this court finds that a stay is not appropriate because the claim is not meritorious.

## The Merits

In Massachusetts "[t]he cases make plain that judges should furnish jurors with a set of practical criteria by which they can assess the quality of an asserted identification and, where justified, that judges should alert jurors to the possibility of an honest but mistaken identification." Commonwealth v. Williams, 54 Mass. App. Ct. 236, 239, 764 N.E.2d 889, 893 (2002), and cases cited. Thus, "whenever identification is an issue raised by the evidence," the courts are to give a "general identification instruction." Commonwealth v. Rodriguez, 378 Mass. 296, 391 N.E.2d 889 (1979). Williams, 54 Mass. App. Ct. at 240 & n.4, 764 N.E.2d at 893 & n.4. When the facts permit it and the

defendant requests it, the jury also should be given a so-called Pressley instruction to warn the jurors of the possibility of an honest but mistaken identification. Id. at 239-240, 764 N.E.2d at 893 (citing Commonwealth v. Pressley, 390 Mass. 617, 620, 457 N.E.2d 1119, 1121 (1983)) ("Fairness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it."). No precise language is required in the jury charge, "so long as the gist of the applicable law was delivered." Williams, 54 Mass. App. Ct. at 242, 764 N.E.2d at 894.

In Darby's case, the trial judge clearly instructed the jury that they could consider whether a witness made a "good-faith mistake" in an identification. This charge perhaps is not as detailed as that found in the Massachusetts Model Jury Instructions,[5] but it conveys the same message and is comparable to other charges which have been deemed sufficient. See, e.g., Commonwealth v. Monteiro, 51 Mass. App. Ct. 552, 556-57 & n.5, 747 N.E.2d 721, 725 & n.5 (2001) (charge that jury "must consider not only whether the witness is trying to tell the truth or is lying, but . . .[also] whether the witness's identification is accurate or instead is an honest mistake" is consistent with Model Jury

---

[5] Instruction 6.05 of the Model Jury Instructions for Use in the District Court provides: "In deciding whether or not to believe a witness who identifies the defendant as the perpetrator, remember that you must consider not only whether the witness is trying to tell you the truth or is lying. You must also decide whether that witness's identification is accurate or instead is an honest mistake. Sometimes people perceive an event erroneously, or forget things, or get confused. Deciding whether a witness is trying to tell you the truth is only the first step. You must then go on to decide whether the witness's identification is accurate in fact."

Instruction 6.05 and "adequately conveyed the substance of the idea that the Pressley opinion requires"); Commonwealth v. Burgos, 36 Mass. App. Ct. 903, 904, 627 N.E.2d 471, 473 (1994) (charge that "[i]n analyzing identification testimony you, of course, can consider whether or not the witness might simply be mistaken" is sufficient under Pressley as it "implies bona fide error, not contrivance"). In Darby's case, the trial judge's instruction conveyed the "gist" of the law as set forth in Pressley, i.e., that the witness could have been honestly mistaken. Since Darby's challenge to the jury instructions is not potentially meritorious, no stay is warranted.

### III   CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the respondent's second motion to dismiss (Docket No. 25) be denied without prejudice, and that Darby's motion to stay (Docket No. 32) be denied as well. In addition, this court recommends that petitioner be given thirty (30) days from the District Judge's ruling to drop his unexhausted claims. If he fails to do so, the respondent should be allowed to renew his motion to dismiss.[6]

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-

                    / s / Judith Gail Dein
                    Judith Gail Dein
                    United States Magistrate Judge

---

54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).